**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

CARL EMERSON-BEY,                    *

       Plaintiff,                    *

       v.                    *        Civil No. 12 -CV-2700 JFM

BOBBY SHEARIN                    *

       Defendant.                    *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**

Defendant, Warden Bobby Shearin, by his attorneys, Douglas F. Gansler, Attorney General of Maryland, and Dorianne A. Meloy, Assistant Attorney General, in support of his Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, files this Supplemental Memorandum of Law and states as follows:

**I.    INTRODUCTION**

Plaintiff, an inmate at North Branch Correctional Institution (NBCI), claims his due process rights were violated when Warden Bobby Shearin (Shearin) failed to investigate two Administrative Remedy Procedure (ARP) complaints submitted by Plaintiff.  Plaintiff claims Shearin failed to investigate the claims in the ARPs submitted by Plaintiff that correctional officers wrote a fraudulent rule violation against him.  Further, Plaintiff claims Shearin conspired with the correctional officers to violate Plaintiff's due process rights when Plaintiff alleges he was "unjustly" found guilty of the rule violations. Plaintiff claims he has been defamed as a result of the guilty finding of the rule violation.  Plaintiff requests injunctive and monetary relief.

On January 14, 2013, Defendants' Motion to Dismiss or, In the Alternative, Motion for

Summary Judgment was filed. (ECF Doc.10).   At that time a decision by the administrative law judge (ALJ) was pending in IGO No. 20121717.  On March 7, 2013, the ALJ rendered a decision denying and dismissing the grievance.  Because Plaintiff fails to state a violation of his constitutional rights upon which relief can be granted, the court should dismiss, or in the alternative, grant summary judgment on behalf of the Defendant.

## II.   SUPPLEMENTAL FACTUAL BACKGROUND

In support of this motion the following supplemental facts are presented:

**Administrative Remedy Process**

Plaintiff filed a grievance with the IGO on August 22, 2012.  Exhibit 1, Decision OAH No.: DPSCS-IGO-001V-12-48017.   On October 17, 2012, the IGO wrote the Plaintiff indicating it had conducted a preliminary review of the grievance and requested Plaintiff  to provide all missing disciplinary paperwork within 30 days of the date of the letter.  Exhibit 2, selected IGO records.  On November 8, 2012, the Notice of Hearing and the Prehearing Order  were issued. *Id.*  On December 19, 2013, an administrative hearing was held. Exhibit 1, p.1.   The grievance was denied and dismissed on March 7, 2013. *Id.*, p.9.

The administrative law judge (ALJ) found the disciplinary conviction was based on substantial evidence and was not clearly erroneous. *Id.*  Although Plaintiff did not press his argument that his sanction was excessive at the hearing, the ALJ found that the sanctions imposed by the hearing officer[1] were in accordance with the Adjustment History Sentencing Matrix and did not violate any federal or state constitutional, statutory, regulatory, or policy requirement. *Id.*, p.7-9.

_____

[1]The hearing officer was John Sandstrom who is a named defendant in Carl Emerson-Bey v. John Sandstrom, JFM 12-CV-2701.  Keith Arnold is a named defendant in Carl Emerson-Bey v. Keith Arnold, JFM 12-CV-2696.

In making her determinations, the ALJ reviewed the evidence presented at the adjustment hearing including the video and listened to the CD of the entire disciplinary hearing. *Id.*, p.5 and p.9. The ALJ agreed with the hearing officer that the video did not contradict reports from the staff. *Id.*, p.5. The ALJ made the following findings of fact as to the events depicted on the video:

> "[T]he Grievant barreling, or in the Hearing Officers's words, "storming"out f his cell. He appears to be upset. He is clearly addressing CO II Snyder, and gesturing in a way that lends credibility to the CO's report of the content of the conversation. As the Grievant starts down the stairs, he turns to continue his interaction with CO II Snyder, who remained on the second floor above the Grievant. The Grievant then proceeds to the control center, or "bubble" as it was referred to during the original proceedings and at the hearing before me. He appears to yell at the CO in the Bubble. He then starts through a doorway, then backs up to have further interaction with the CO in the bubble, gesturing vigorously with his hands. He then leaves the unit. Some minutes later CO II Snyder leaves the unit. Some minutes after that the Grievant returns to the unit escorted by CO II Snyder and another CO. The Grievant is locked in his cell and shortly thereafter CO II Snyder and CO II Drybola go to the cell, the Grievant comes out, he is handcuffed and walked off the unit."

> *Id.*, p. 5-6.

Plaintiff alleged at the administrative hearing that the institutional representative at the hearing tried to tell the hearing officer that the video did not match the written reports, but the hearing officer cut him off. *Id.,* p. 7. The ALJ found that nothing resembling the exchange reported by Plaintiff was audible on the CD. *Id.* The ALJ describes in detail the audio portion of the CD concerning the institutional representatives statements. *Id.,* p. 7. The ALJ found that any suggestion that the institutional representative did not believe Plaintiff should be found guilty of the rule violations to be inconsistent with the audio recording. *Id.*

All attached records have been certified as true and accurate copies. Exhibit 2; Exhibit 3, Declaration of Leslie Simpson.

III.     SUPPLEMENTAL  ARGUMENT

   A.     Rooker-Feldman Doctrine

Federal district courts generally do not review state court decisions. *Friedman's, Inc. v. Dunlap,* 290 F.3d 191(4th Cir. 2002), note 5 ("The *Rooker-Feldman* doctrine was distilled from the Supreme Court's decisions in *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), and *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923)) According to *Friedman's, Inc.,* the *Rooker-Feldman* doctrine is premised largely upon 28 U.S.C.A. § 1257(a), and ordinarily bars direct review of both the highest and lower state court decisions. *Id.* at 196 -197.  Indeed, in *Kirkpatrick v. Lenoir County Bd. of Educ.,* 216 F.3d 380, 387  (4th Cir. 2000), the Fourth Circuit stated: "Thus, while a federal district court may review a state review officer's decision and even defer to that decision, the federal district court does not sit as an appellate court. Federal district courts are courts of limited, original jurisdiction with no power to sit as appellate tribunals over state court or administrative proceedings. Federal district courts cannot directly supervise and supplant state administrative action by affirming, reversing, or modifying administrative decisions." Federal courts simply should not act as appellate court for the review of state court administrative proceedings. *Fairfax County Redevelopment & Housing Authority v. W.M. Schlosser Co., Inc.,* 64 F.3d 155, 157 -158 (4th Cir.1995) In so far as Plaintiff seeks to have the federal district court sit as an appellate tribunal and re-litigate the ALJ's decisions, that (1) the disciplinary hearing was based on substantial evidence and was clearly not erroneous, and (2) the sanctions were not excessive and did not violate any federal or State constitutional, statutory, regulatory, or policy requirement, that attempt should be outright rejected.

**B.**     **This Suit Is Barred by *Res Judicata* and the Doctrine of Collateral Estoppel.**

The doctrine of *res judicata*, or claims preclusion, bars judgment for the plaintiff in this case. The doctrine of *res judicata* provides that "a final judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." *Nash County Bd. of Educ. v. Biltmore Co.,* 640 F.2d 484, (4th Cir. 1981); *cert. denied,* 454 U.S. 878 (1981); *quoting Montana v. United States,* 440 U.S. 147, 153 (1979). The principles of *res judicata* apply to § 1983 claims. *Allen v. McCurry,* 449 U.S. 90 (1980). The essential elements necessary for claim preclusion are: (1) a final judgment on the merits in the earlier suit; (2) the parties are identical, or in privity in the two actions; and (3) the claims in the second matter are based on the same cause of action as the previous action. *In re Varat Enterprises, Inc.,* 81 F.3d 1310 (4th Cir. 1996); *Keith v. Aldridge,* 900 F.2d 736 (4th Cir. 1990). What is more, claim preclusion obtains where an inmate unsuccessfully presses his grievance with a hearing before an Administrative Law Judge of the Office of Administrative Hearings. *Batts v. Lee,* 949 F. Supp. 1229 (D. Md. 1996). Each of these factors compels a finding that this claim is barred by the ALJ's adverse decision against Plaintiff.

Under federal common law, collateral estoppel, also called issue preclusion, provides that once an issue of fact or law has been determined in a judicial or quasijudicial proceeding, that determination should not be subject to relitigation in a second suit, on the same or a different cause of action, involving one of the parties. *Allen v. McCurry*, 449 U.S. at 94; *see Wool v. Maryland-National Capital Park & Planning Comm'n*, 664 F. Supp. 225, 229 (D. Md. 1987). If collateral estoppel applies in a particular case, the factual determinations and conclusions made in the previous case are considered established in the second case. Therefore, if the IGO decisions are accorded collateral estoppel effect, that the video supported the hearing officers' decision on each rule

violation was based on substantial evidence, the video evidence did not contradict the staff's reports, the sanctions imposed were within the sentencing matrix, and the sanctions did not violate any federal or state constitutional, statutory, regulatory, or policy requirement, should not be disturbed.

Collateral estoppel protects parties from the expense and inconvenience of repetitive litigation on the same issues and conserves judicial resources. *University of Tennessee v. Elliott*, 478 U.S. 788, 798 (1986); *Allen*, 449 U.S. at 94; *Montana v. United States*, 440 U.S. 147, 153-54 (1979). By preventing inconsistent judgments, preclusion law engenders confidence and encourages reliance on adjudication. *Allen*, 449 U.S. at 94; *Montana* 440 U.S. at 153-54. Further, application of preclusion law by federal courts to state court or administrative decisions "promote[s] the comity between state and federal courts that has been recognized as a bulwark of the federal system." *University of Tennessee*, 478 U.S. at 798; *Allen*, 449 U.S. at 96.

Consistent with the principles and purposes of preclusion law, unreviewed state administrative decisions may be the basis for collateral estoppel in a federal action involving the same issues. As explained by the Supreme Court: [W]hen a state agency 'acting in a judicial capacity ... resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' [*United States v.*] *Utah Construction and Mining Co.*, 384 U.S. [394,] 422 [(1966)], federal courts must give the agency's fact finding the same preclusive effect to which it would be entitled in the State's courts. *University of Tennessee*, 478 U.S. at 797-98; *see Dionne*, 40 F.3d at 682; *Layne v. Campbell County Dep't of Social Servs.*, 939 F.2d 217, 219 (4th Cir. 1991).

Together *Allen* and *University of Tennessee* provide the framework for determining the preclusive effect of the administrative decisions at issue in this case. The first step is to determine (1) whether the ALJ presiding at the IGO hearing acted in a judicial or quasi-judicial capacity, and

(2) whether the Plaintiff was given a full and fair opportunity to litigate his claims. If these questions are answered in the affirmative, this Court should determine what preclusive effect a Maryland court would give to the ALJs' findings of fact.

For the purposes of applying collateral estoppel, "[a]cting in a judicial capacity requires that an individual in an administrative hearing be afforded an impartial tribunal." *Hall v. Marion School District Number 2*, 31 F.3d 183, 191 (4th Cir. 1994) (citing *Withrow v. Larkin*, 421 U.S. 35, 46 (1975)). The IGO, functioning with the use of Administrative Law Judges from the Office of Administrative Hearings, is an impartial tribunal. The IGO and the OAH are independent bodies, not subject to the direction of institution officials. *Batts*, 949 F. Supp. at 1233.

In determining whether the parties are given a full and fair opportunity to litigate the issues, factors to be considered include the notice provided to parties of the pending hearing, the subpoena powers of the tribunal, the availability of discovery, the existence of evidentiary rules, and the adequacy of the preserved record. *See McCulty v. Rockefeller*, 570 F. Supp. 1455, 1459-60 (W.Va. 1983); *Gear v. City of Des Moines*, 514 F. Supp. 1218, 1222 (D. Io. 1981). As outlined in *Batts*, the inmate at the IGO is provided reasonable notice, discovery, may subpoena witnesses, personally appear at the hearing and also appear with a representative, may call witnesses, offer evidence, cross-examine witnesses and make opening and closing statements. *Batts*, 949 F. Supp. at 1233[2]. Further,

---

[2]*See* Md. Code, State Government Article, Administrative Procedure Act § 10-201, *et seq*., (2004 Repl. Vol.) full and fair opportunity to litigate; APA § 10-208, Notice of hearing; APA § 10-213, Evidence; APA § 10-214(a) Findings based on evidence; APA § 10-220(a) Proposed findings of fact, conclusions of law. Code of Maryland Regulations (COMAR) 28.02.01.05, Notice of hearing; 28.02.01.08, Powers and duties of judges (A)(1) Conduct a full, fair and impartial hearing; (B)(1) administer oaths and affirmations; B(2) issue subpoenas for witnesses and production of evidence; B(5) examine witnesses as necessary for a full and complete record; 28.02.01.09(A) a party may represent himself or (B) be represented by an attorney, or when authorized by law, by a

a record is made of the hearing and judicial review may be sought. *Id*.

Having satisfied the first prong of the *Batts* test, the inquiry turns to whether the ALJ actually

and necessarily determined issues identical to those presented to this Court. Clearly the issue of

whether there was substantial evidence to support the hearing officers' decision was litigated before

the ALJ and required to be determined for resolution of his claims. Because the ALJ determined that

the hearing officer's decision was based on substantial evidence and was not clearly erroneous, the

disciplinary hearing did not violate Plaintiff's substantive due process rights.  Satisfying the second

and third prongs of the *Batts* test, collateral estoppel should be properly applied.  Because there is no

proper basis for this Court to reject the notion of issue preclusion,  the complaint should be dismissed.

## C.    **Failure to Exhaust**

The Prison Litigation Reform Act (PLRA) generally requires prisoners to pursue their

administrative grievances until they receive a final denial of the claims, appealing through all

available stages in the administrative process. 42 U.S.C. § 1997e(a) provides: "No action shall be

brought with respect to prison conditions under section 1983 of this title, or any other Federal law,

by a prisoner confined in any jail, prison, or other correctional facility *until* such administrative

remedies as are available are exhausted." (emphasis added).

In Maryland, filing an appeal of a hearing officer's guilty decision or sanctions must be in

writing to the warden of the facility where the defendant inmate is housed within 15 days of receipt

of the hearing officer's decision. *See* COMAR 12.02.27.33 (A)(1) and (2).  An inmate defendant may

file an  appeal of the warden's affirmation of a hearing officer's decision or sanction to the IGO

---

non-attorney; 28.02.01.10 discovery; 28.02.01.11, subpoenas; 28.02.01.17, conduct of hearings;
28.02.01.18, evidence; 28.02.01.23, record.

within 30 days of the date that the (1) grievant received the warden's final response to the appeal; or

the Warden's response to the appeal was due to the grievant. *See* COMAR 12.02.27.33(D); *See also*

COMAR 12.07.01.05(C). The Executive Director of the IGO shall conduct a preliminary review of

a grievance and determine if the grievance should be dismissed or proceed to a hearing.

COMAR12.07.01.06.A. The Executive Director's decision to dismiss a grievance following a

preliminary review is final. COMAR 12.07.01.06.D. If a hearing is held and the administrative law

judge finds that the grievance was without merit, that decision is final for the purpose of judicial

review. COMAR 12.07.01.10.A. (2). In order to show administrative exhaustion, the plaintiff must

demonstrate that he appealed all the way to the IGO through all the steps in the administrative

process.

Exhausting administrative remedies after a Complaint is filed will not save a case from

dismissal for failure to exhaust administrative remedies. See, *Neal v. Goord*, 267 F.3d 116, 121-22

(2d Cir. 2001)(overruled on other grounds)(a Section 1983 action, citing numerous cases). Allowing

prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement,

undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal

court. See, *Neal*, 267 F.3d at 123. Moreover, if during the pendency of a suit, the administrative

process were to produce results benefitting plaintiff, the federal court would have wasted its resources

adjudicating claims that could have been resolved within the prison grievance system at the outset.

*Id.* Further, in *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain

language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal

Court. . . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of

the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted

before the filing of a suit in Federal Court.[3]

Plaintiff filed the instant action on September 10, 2012. (ECF Doc. 1).  Although Plaintiff

filed a grievance with the IGO on August 22, 2012, the grievance was not reviewed or completed

prior to the filing of the Complaint in this matter.  On October 17, 2012, the IGO  wrote the Plaintiff

indicating it had conducted a preliminary review of the grievance and requesting Plaintiff to provide

all missing disciplinary paperwork withing 30 days of the date of the letter.  On November 8, 2012,

a notice of hearing and a prehearing order were issued scheduling the hearing for December 19, 2012.

 On December 19, 2012, the administrative hearing was held concerning Plaintiff's grievance. The

grievance was denied and dismissed by the ALJ on March 7, 2013.  Plaintiff clearly had not exhausted

his administrative remedies when he filed the complaint in this matter on September 10, 2012.

Further, Plaintiff did not raise any complaints about Shearin's conduct in his grievance.  Plaintiff's

only complaint were the hearing officer's decision was not supported by substantial evidence and the

sanctions imposed by the hearing officer were excessive. Therefore, the defendant is entitled to

dismissal of the complaint.

## IV.    CONCLUSION

Defendant respectfully requests this Court to dismiss the case or that summary judgment be

entered in his favor.

---

[3] See, *Blackburn v. South Carolina*, 2009 U.S. Dist. LEXIS 18398 (D.S.C., March 10, 2009), affirmed by, motion denied by *Blackburn v. South Carolina, 2010 U.S. App. LEXIS 25751* (4th Cir. S.C., Dec. 17, 2010); *Kaufman v. Baynard*, 2012 U.S. Dist. LEXIS 32557, 2012 WL 844480 (S.D. W. Va. Feb. 3, 2012), adopted by, dismissed by, summary judgment granted by *Kaufman v. Baynard*, 2012 U.S. Dist. LEXIS 32552 (S.D. W. Va., Mar. 12, 2012).

Respectfully submitted,
DOUGLAS F. GANSLER
Attorney General of Maryland


_____/s/_____
DORIANNE A. MELOY
Assistant Attorney General
Federal Bar No. 16362

St. Paul Plaza - 19th Floor
200 St. Paul Place
Baltimore, Maryland  21202
(410) 576-6429 (Telephone)
(410) 576-6880 (Telefax)

E-mail: dmeloy@oag.state.md.us

Attorneys for Defendant

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 10th day of May, 2013, a copy of the foregoing

Supplemental Memorandum in support of the Defendant's Motion to Dismiss or, in the Alternative,

Motion for Summary Judgment, was mailed, postage prepaid to:

Carl Emerson-Bey, #169-276
North Branch Correctional Institution
14100 McMullen Highway, S.W.
Cumberland, Maryland 21502


_____/s/_____
DORIANNE A. MELOY
Assistant Attorney General