| | | |
|---|---|---|
| CARL EMERSON-BEY, DOC #129276, | * | BEFORE KIMBERLY A. FARRELL, |
| GRIEVANT | * | AN ADMINISTRATIVE LAW JUDGE |
| v. | * | OF THE MARYLAND OFFICE |
| THE MARYLAND DIVISION | * | OF ADMINISTRATIVE HEARINGS |
| OF CORRECTION | * | OAH No.: DPSC-IGO-001V-12-48017 |
| | * | IGO No.: 20121717 |

* * * * * * * * * * * * *

## DECISION

STATEMENT OF THE CASE
ISSUE
SUMMARY OF THE EVIDENCE
FINDINGS OF FACT
DISCUSSION
CONCLUSIONS OF LAW
ORDER

## STATEMENT OF THE CASE

On August 22, 2012, the Grievant filed a grievance with the Inmate Grievance Office (IGO), which it summarized as follows:

> This grievance is an appeal from a finding that the Grievant was guilty of violating inmate rules 104 (intimidating, coercive, or threatening language) and 405 (disrespect or vulgar language) after a hearing conducted on June 21, 2012. In essence, the Grievant raises the following claims, which are limited by the administrative exhaustion requirement of COMAR 12.07.01.02(C) to the non-conclusory claims raised in the disciplinary hearing and-or the Grievant's appeal to the Warden: (1) the findings of guilt were not supported by substantial evidence; and (2) the sanctions imposed were excessive.

I held a hearing on December 19, 2012, via video conference. Md. Code Ann., Corr. Servs. § 10-207(c) (2008). I was located at the Office of Administrative Hearings (OAH) in Hunt Valley, Maryland. David Barthlow, Assistant Director of the Inmate Disciplinary Program, represented the Division of Correction (DOC). He was also at OAH. The Grievant, who

Exhibit 1

represented himself, was at North Branch Correctional Institution (NBCI), a DOC facility. Randy Durst, the IGO Coordinator for NBCI was present at NBCI and assisted in facilitating the hearing.

Procedure in this case is governed by the contested case provisions of the Administrative Procedure Act, sections 10-201 through 10-226 of the State Government Article, Annotated Code of Maryland (2009 & Supp. 2012); the General Regulations of the IGO, Code of Maryland Regulations (COMAR) 12.07.01; and the Rules of Procedure of the OAH, COMAR 28.02.01.

## ISSUES

Was the Grievant's disciplinary conviction on June 21, 2012, for violation of rule numbers 104 and 405, based upon substantial evidence and not clearly erroneous?

If so, were the sanctions imposed excessive?

## SUMMARY OF THE EVIDENCE

Exhibits

The IGO file was incorporated into the record and contained the following documents:

IGO #1   Grievance, received at the IGO August 22, 2012
IGO #2   Letter from the Grievant to the IGO, received at the IGO September 10, 2012
IGO #3   Letter from the Grievant to the IGO, received at the IGO September 21, 2012
IGO #4   Letter from the Grievant to the IGO, received at the IGO October 12, 2012
IGO #5   Maintain Infractions Data Sheet
IGO #6   Letter from the IGO to the Grievant, October 17, 2012
IGO #7   Letter from the Grievant to the IGO, received at the IGO October 12, 2012
IGO #8   Correspondence from the Grievant to the IGO, with attachments, received at the IGO November 5, 2012
IGO #9   Prehearing Order, November 8, 2012
IGO #10  Notice of Hearing, November 8, 2012
IGO #11  Cover sheet, with attachments, from NBCI to the IGO, December 3, 2012
IGO #12  Transmittal from the IGO to the OAH, undated
IGO #13  Notice to Presiding ALJ, December 12, 2012

Additionally, the Grievant requested that I review video of the original incident[1] and the audio recording of his disciplinary hearing. I requested these materials of the DOC and they were provided to me for review.

Testimony

I did not take testimony because I limited the case to oral argument.

## **FINDINGS OF FACT**

I find the following facts by a preponderance of the evidence:

1. On June 1, 2012, and at all times relevant to this matter, the Grievant was housed at NBCI, a DOC facility.

2. On June 1, 2012, Correctional Officer (CO) Snyder issued the Grievant a Notice of Inmate Rule Violation and Disciplinary Hearing charging the inmate with violating rule 104, which prohibits the use of intimidating, coercive, or threatening language, and rule 405, which prohibits the demonstrating of disrespect or the use of vulgar language.

3. The notice reads as follows:

> On Friday, June 1st, 2012, I, Officer M. Snyder COII was assigned to Housing Unit 4 as B-Tier Officer. At approximately 4:50 p.m. while conducting a tier walk, [the Grievant] was violently kicking his door. Upon approaching [the Grievant's] cell, I asked him what was wrong. [The Grievant] stated "I need to take my fucking medication to the Nurse and the dumbass up there locked me in my cell." After asking Officer D. Drybola COII to open Cell B-62, [the Grievant] exited the cell. [The Grievant, with his lips quivering and with clenched fists stated to me "I wasn't locking in CO, I need my inhaler." I informed [the Grievant] that he needed to let someone know that he was retrieving his inhaler for the Nurse. Due to just returning from medical, I had just returned to the tier and did not know what was wrong. [The Grievant] told me to fuck off and approached the A/B Control Center and stated to Officer D. Drybola COII "I've been locked up for 30 years, you'd die for that type of shit where I come from." Due to his hostile attitude, I escorted [the Grievant] the Housing Unit 4 Medical Room and attempted to counsel him. I advised [the Grievant] that his hostile and

---

[1] The video exhibit was sealed after I viewed it. It should remain sealed and unavailable for review unless its release is specifically authorized by me or by a reviewing court with proper jurisdiction.

Exhibit 1

disrespectful actions towards myself and Officer Drybola COII will lead to his removal from Housing Unit 4. [The Grievant] again stated "I've been locked up for 30 years CO, I don't give a fuck about going to Housing Unit 1. You want to ignore me and do a tier walk, I'll fuck your white ass up." Due to his hostility, I locked [the Grievant] in his cell and asked for assistance from Officer D. Drybola COII. With assistance from Officer D. Drybola COII, I approached [the Grievant's] cell and placed [the Grievant] in handcuffs. While escorting [the Grievant] off of B-Tier, [the Grievant] stated, "I don't give a fuck about going to one, when I get back I will see your pussy white asses on the compound." [The Grievant] was placed in A/B Holding Cell to prevent [the Grievant] from inciting other inmates. [The Grievant] was identified by his DOC Identification Card and informed of this adjustment.

IGO #11.

4. On June 21, 2012, Jon Sandstrom, a Hearing Officer with the DOC, conducted a disciplinary hearing on the charges. The Hearing Officer considered the following evidence: the information contained in the notice, a matter of record written by COII Drybola, the Grievant's testimony, and video of the incident.

5. After considering all of the evidence, the Hearing Officer found the Grievant in violation of rules 104 and 405. The Hearing Officer imposed 120 days of segregation and revoked 60 days of good conduct credits as a sanction for the violation of rule 104. He imposed 15 concurrent segregation days for the violation of Rule 405.

6. The Reduction in Violence Committee reviewed the sanctions and recommended that in addition to the original sanctions the Grievant have "30 days loss of appliances (Ex. Walkman, TV, etc.) after completion of the seg time." IGO #11, Administrative Action, July 17, 2012. The Administrative Action was signed by Keith K. Arnold, who is listed on the letterhead of the Administrative Action as the Chief of Security, but who apparently was then the Acting Warden.

7. On July 24, 2012, Keith Arnold, in his capacity as Acting Warden, signed the Hearing Decision Review form affirming the decision of the hearing officer and the sanctions as amended.

## DISCUSSION

The burden of proof in an inmate grievance rests with the Grievant, who must prove his case by a preponderance of the evidence. COMAR 12.07.01.08A. The hearing officer's decision will be affirmed "if the administrative law judge determines the original decision was based on substantial evidence." COMAR 12.07.01.08B(1)(a). Because the hearing officer had the ability to observe witnesses and to weigh credibility, I may not substitute my judgment for his on factual matters. COMAR 12.07.01.08B(1)(b). In reviewing interpretations of law, including applicable rules, directives, and regulations, the "administrative law judge shall affirm the decision of the disciplinary proceeding if the administrative law judge determines that the interpretation was not erroneous, or an erroneous interpretation was not prejudicial." COMAR 12.07.01.08B(2).

The Grievant raised several points in his argument. He argued that the Hearing Officer's decision was not based on substantial evidence because the video did not support the chain of events occurring as reported by COII Snyder. The Hearing Officer viewed the video and disagreed, finding that the video "did not at all contradict reports from staff." IGO #11, Inmate Hearing Record, pg. 3. I viewed the video and wholeheartedly concur with the conclusion reached by the Hearing Officer. The video has no audio component, but what can be seen shows the Grievant barreling, or, in the Hearing Officer's words, "storming" out of his cell. He appears to be upset. He is clearly addressing COII Synder, and gesturing in a way that lends credibility to the CO's report of the content of the conversation. As the Grievant starts down the stairs, he turns to continue his interaction with COII Snyder, who remained on the second floor above the Grievant. The Grievant then proceeds to the control center, or "bubble" as it was referred to during the original proceedings and at the hearing before me. He appears to yell at the CO in the

-5-

Exhibit 1

bubble. He then starts through a doorway, then backs up to have further interaction with the CO in the bubble, gesturing vigorously with his hands. He then leaves the unit. Some minutes later COII Snyder leaves the unit. Some minutes after that the Grievant returns to the unit escorted by COII Snyder and another CO. The Grievant is locked in his cell and shortly thereafter COII Snyder and COII Drybola go to the cell, the Grievant comes out, he is handcuffed and walked off the unit.

As I understand the Grievant's argument, he believes that COII Snyder's statement that he "escorted" the Grievant off the unit the first time he left, immediately after his confrontation with the CO in the bubble, is not accurate and destroys all value of the incident as reported. COII Snyder did not walk with the Grievant as he left the unit the first time. The COII completed a tier check, then followed the Grievant, and obviously met up with him in the medical unit because they are seen coming back on to the housing unit together. While one might quibble the use of the word "escort" to describe the events, the video is nevertheless a valuable confirmation of COII Snyder's and COII Drybola's version of events. It belies the Grievant's statements at the disciplinary hearing and at the appeal hearing.

The Grievant raised other arguments in his written submissions to the IGO which he did not pursue at the hearing, arguing that there was no evidence whatsoever on the video to support that he and COII Snyder were "engaged in a verbal confrontation." IGO #8, June 21, 2012 letter by Grievant. He also argued that COII Snyder, because he turned and continued down his tier check, could not have heard any exchange occurring between the CO in the bubble and the Grievant. The physical layout is such that COII Snyder could have heard some or all of the Grievant's exchange with COII Drybola. None of the arguments raised in the written pleadings are persuasive.

The Grievant also argued that the institutional representative at the hearing tried to tell the Hearing Officer that the video did not match the written reports, but the Hearing Officer cut him off. The fair inference from the argument was that the institutional representative thought that the Grievant was innocent, or being treated unfairly. I listened to the CD of the entire hearing. Nothing resembling the exchange reported by the Grievant is audible on the CD. The institutional representative explains something to the Hearing Officer about the location of the particular medical unit that was under discussion. He is not cut off and finishes what he started to say. The Hearing Officer responds to the statement made by the institutional representative. Further, the institutional representative can be heard later in the hearing quietly addressing the Grievant directly and telling him that regardless of what allegedly happened after he left the unit, the interaction at the bubble was sufficient to support the charges. The Grievant can be heard in reply protesting that he did not say the things attributed to him. Any suggestion that the institutional representative did not believe the Grievant should be found guilty of the Rule violations is inconsistent with the audio of the hearing.

The Hearing Officer's decision on each Rule violation is supported by substantial evidence and will not be disturbed.

In reviewing a sentence imposed in a disciplinary proceeding, I "shall affirm the decision of the disciplinary proceeding if the sentence imposed does not violate any federal or State constitutional, statutory, regulatory, or policy requirement." COMAR 12.07.01.08B(4). The Grievant concentrated his argument at the OAH hearing on what he said the video would show and motions that he wanted to have granted in the event that the DOC did not produce the video. The motions were mooted when the DOC produced the video for my review. He did not press his argument that his sanction was excessive. In determining whether the sanction was

Exhibit 1

excessive, it is necessary to know the Grievant's adjustment history. The Grievant fell in the "good" category, with at least twelve months having passed since his last infraction. (The Grievant stated in his grievance that he had not had an infraction for fifteen years. IGO #1.)

Rule 405 is a category IV infraction; rule 104 is a category I infraction. The Adjustment History Sentencing Matrix sets for the penalty ranges for various infractions. For a category I infraction, for an inmate with a "good" adjustment history, the penalty range is 60 to 120 days of segregation and loss of 60 to 90 good conduct credits. COMAR 12.02.27.37. The sanction imposed by the Hearing Officer for the rule 104 infraction was 120 days of segregation and the loss of 60 good conduct credits. The sanction imposed was within the sentencing matrix. The Grievant pointed out that the institutional representative made a recommendation for only 60 days of segregation. While that is true, it is the Hearing Officer's responsibility to consider the recommendations offered by all participants and then to "determine and impose" appropriate sanctions according to the sentencing matrix. COMAR 12.02.27.29. The Hearing Officer is not bound to follow the institutional representative's suggestion.

On the rule 405 violation, the sentencing matrix authorizes 0 to 15 days of segregation and the loss of 5 to 10 good conduct credits. COMAR 12.02.27.37. The Hearing Officer imposed a sanction of 15 days of segregation concurrent with the rule 104 sanction. He did not take any good conduct credits as a sanction for the rule 405 violation. The penalty was within the limits set by the sentencing matrix.

I find that the sentences imposed do not violate any federal or State constitutional, statutory, regulatory, or policy requirement and accordingly I will not disturb them. COMAR 12.07.01.08B(4).

## CONCLUSIONS OF LAW

I conclude as a matter of law that the disciplinary conviction by the Hearing Officer on June 21, 2012, was based on substantial evidence and was not clearly erroneous. COMAR 12.07.01.08B(1)(a). I further find that the sanctions imposed by the Hearing Officer were in accordance with the Adjustment History Sentencing Matrix and do not violate any federal or State constitutional, statutory, regulatory, or policy requirement and accordingly I will not disturb them. COMAR 12.02.27.37; 12.07.01.08B(4).

## ORDER

Having concluded that the grievance is without merit, I **ORDER** that it is **DENIED** and **DISMISSED**.

March 7, 2013
Date Decision Mailed

*Kimberly A. Farrell*
Kimberly A. Farrell
Administrative Law Judge

KAF/kkc
Document #140420

## REVIEW RIGHTS

You are entitled to file a petition for judicial review with the circuit court for the county in which the institution you are confined is located within thirty days of the mailing of the decision. Md. Code Ann., Corr. Servs. § 10-210(b) (2008); Md. Rules § 7-201 through 7-210. This decision may only be reversed or modified on appeal if any substantial right may have been prejudiced because a finding, conclusion, or decision of the final decision maker: (1) is unconstitutional; (2) exceeds the statutory authority or jurisdiction of the final decision maker; (3) results from an unlawful procedure; (4) is affected by any other error of law; (5) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or (6) is arbitrary or capricious. Md. Code Ann., State Gov't § 10-222(h)(3) (2009). Judicial review of disputed issues of fact shall be confined to the record for judicial review supplemented by additional evidence taken. Md. Code Ann., State Gov't § 10-222(f) (2009). The Office of Administrative Hearings is not a party to any review process.

Exhibit 1

**Copies mailed to:**

Carl Emerson #169276
North Branch Correctional Institution
14100 McMullen Highway, SW
Cumberland, MD 21502

David Barthlow, Assistant Director
Inmate Disciplinary Program
Division of Correction
6776 Reisterstown Road, Suite 310
Baltimore, MD 21215-2341

Randy Durst, the IGO Coordinator
North Branch Correctional Institution
14100 McMullen Highway, SW
Cumberland, MD 21502

J. Michael Stouffer, Commissioner
Division of Correction
6776 Reisterstown Road, Suite 310
Baltimore, MD 21215-2341

Exhibit 1

| | |
|---|---|
| CARL EMERSON-BEY, DOC #129276, | * BEFORE KIMBERLY A. FARRELL, |
| GRIEVANT | * AN ADMINISTRATIVE LAW JUDGE |
| v. | * OF THE MARYLAND OFFICE |
| THE MARYLAND DIVISION | * OF ADMINISTRATIVE HEARINGS |
| OF CORRECTION | * OAH No.: DPSC-IGO-001V-12-48017 |
| | * IGO No.: 20121717 |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## FILE EXHIBIT LIST

The IGO file was incorporated into the record and contained the following documents:

| | |
|---|---|
| IGO #1 | Grievance, received at the IGO August 22, 2012 |
| IGO #2 | Letter from the Grievant to the IGO, received at the IGO September 10, 2012 |
| IGO #3 | Letter from the Grievant to the IGO, received at the IGO September 21, 2012 |
| IGO #4 | Letter from the Grievant to the IGO, received at the IGO October 12, 2012 |
| IGO #5 | Maintain Infractions Data Sheet |
| IGO #6 | Letter from the IGO to the Grievant, October 17, 2012 |
| IGO #7 | Letter from the Grievant to the IGO, received at the IGO October 12, 2012 |
| IGO #8 | Correspondence from the Grievant to the IGO, with attachments, received at the IGO November 5, 2012 |
| IGO #9 | Prehearing Order, November 8, 2012 |
| IGO #10 | Notice of Hearing, November 8, 2012 |
| IGO #11 | Cover sheet, with attachments, from NBCI to the IGO, December 3, 2012 |
| IGO #12 | Transmittal from the IGO to the OAH, undated |
| IGO #13 | Notice to Presiding ALJ, December 12, 2012 |

Exhibit 1